**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JACOB HOWELL,** | : | **CIVIL NO. 1:12-CV-2341** |
| | : | |
| **Petitioner,** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **J. CASTANEDA,** | : | |
| | : | |
| **Respondent.** | : | |

**REPORT AND RECOMMENDATION**

I.      **Statement of Facts and of the Case**

A.      **Introduction**

In a prison disciplinary setting, inmates must be afforded certain basic due process protections.  One of the fundamental requisites of due process in this setting is that a Disciplinary Hearing Officer, (DHO), must either consider potentially exculpatory evidence provided by an inmate or provide an adequate explanation of a refusal to examine potentially exculpatory evidence.  Due process is not satisfied, however, if a DHO engages in a wholly unexplained failure to examine or consider such exculpatory evidence.

The instant case aptly illustrates this fundamental requirement of due process in a prison disciplinary setting.  In this case, the petitioner, Jacob Howell, was accused

of possessing two knives found in a common area of his cell.  At the DHO hearing Howell presented substantial, exculpatory evidence to the DHO, asserting without contradiction that he could not have knowingly possessed these knives or introduced them into the cell since he had been moved into the cell, which had not been searched by correctional staff, the night before the weapons were discovered, and the cell was occupied by other inmates.  Howell's assertion that the knives could not have been his since he had just moved into the cell had a potentially persuasive exculpatory quality to it.  Yet, this exculpatory information was never given meaningful consideration by the DHO.  Indeed, the DHO's opinion seems to have wholly misconstrued Howell's statement, since the DHO concluded that Howell's exculpatory statement in some way actually inculpated him.

Since the DHO decision in this case did not adequately address this potentially exculpatory evidence, for the reasons set forth below it is recommended that this petition be granted, in part, and this matter be remanded to the Bureau of Prisons with instructions that the disciplinary citation either be expunged, or Howell be afforded a DHO hearing in which his potentially exculpatory evidence is directly addressed.

## B.   DHO Proceedings

The pertinent facts can be simply stated:

The petitioner, Jacob Howell, is a federal prisoner who was housed at the Federal Correctional Institution, Schuylkill, in April of 2012. On the evening of April 12, 2012, Howell was moved by prison staff into cell 211, a cell previously occupied by other prisoners, and a cell that Howell now shared with another inmate. The following morning, the cell that Howell shared with another inmate was searched and the searching officer reported that:

> On 4/13/2012 at 11:05 am, while shaking down cell 211, I discovered a 5 3/4 & 10 3/4 inch metal weapon located in the window fixture. The 5 3/4 inch weapon was a flattened piece of metal that was bent to a point and the 10 3/4 inch weapon was a silver piece of metal rod from an unknown source. The cell is also occupied by inmate BOWMAN #42372-060.

(Doc. 5-1, Ex. G.)

Prison officials cited Howell for possession of these weapons, and Howell immediately provided a exculpatory explanation to correctional staff, explaining that:

> The report is false. It's got to be false. I'm not looking to do nothing. I just moved in there the night before. I was in the common area for nine months. I understand I'm responsible for what's in the cell. My cellmate said he cleaned the cell. If it was mine, I'd take responsibility for it.

(Id.)

Howell's denial that he had possessed the knives, coupled with his assertion that he had moved into the cell just hours before the staff search after being housed in a common area for nine months, had a clearly exculpatory quality to it. If credited, this

3

assertion would have excused Howell from culpability for this prison infraction since it would have shown that Howell did not knowingly possess these knives.  At a minimum, the facts alleged by Howell substantial cast doubt upon the claim that he knowingly possessed these weapons, and compelled some analysis of Howell's claims, since it would have meant that Howell would have had to have secreted these weapons in his personal affects while residing in a common area, and then smuggled the two weapons into his cell and hidden them in the hours prior to the April 13, 2012 cell search.

However, Howell's exculpatory evidence was never given any meaningful consideration by the DHO at the final disciplinary hearing conducted in this matter. Quite the contrary, without explanation, analysis or any apparent recognition of the exculpatory nature of this evidence,  the DHO seemed to have cited this exculpatory statement by Howell as evidence which inculpated him, stating:

> After consideration of the evidence documented above, the contents of the incident report, and HOWELL's acknowledgment that he is responsible for all items, to include contraband found in his cell, the DHO has drawn the conclusion the greater weight of the evidence/some facts, listed in the paragraphs above, support(s) the finding, inmate HOWELL, Jacob, Register Number 07945-068, committed the prohibited act(s) of Possession of a Weapon, . . ., at or about 11:05 a.m., in Unit #A, Cell #211, at FCI Schuylkill, Pa.

(Id.)

4

After unsuccessfully pursuing administrative appeals[1], Howell filed this petition for writ of habeas corpus, challenging this disciplinary outcome.  (Doc. 1.)  This matter has been fully briefed by the parties, (Docs. 1, 5, and 6.), and is ripe for resolution.  Upon consideration, for the reasons set forth below, we find that the DHO decision in this case did not adequately address this potentially exculpatory evidence.  Therefore, it is recommended that this petition be granted, in part, and this matter be remanded to the Bureau of Prisons with instructions that the disciplinary citation either be expunged, or Howell be afforded a DHO hearing in which his potentially exculpatory evidence is directly addressed.

## II.   Discussion

### A.   The Requisites of Due Process in Prison Disciplinary Hearings –Consideration of Exculpatory Evidence

It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).   The Supreme Court has, however, recognized a set of

---

[1] The respondents contend that Howell failed to fully exhaust his administrative remedies with respect to claims which he makes relating to the timeliness of the DHO hearing, and the presence of a staff representative to assist Howell at the hearing.  Because these assertions are unrelated to the issue which we find compels remand here, the failure to address in a meaningful way Howell's proffered exculpatory evidence, we need not address this particular exhaustion argument.

minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Id. at 563–67. Due process also requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v. Alldredge, 492 F.2d 296, 305–07 (3d Cir.1974).

The Supreme Court further recognized that one of the procedural safeguards that inures to a prisoner in this setting relates to the presentation and objective consideration of exculpatory evidence submitted by inmates facing disciplinary sanctions. Thus, it is well-settled that "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Ordinarily, the right to present evidence is basic to a fair hearing ...." Wolff v. McDonnell, 418 U.S. 539, 566, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). While the Supreme Court in Wolff plainly stated that this inmate right to present evidence was limited and may be curtailed or restricted entirely when such restrictions are compelled by concerns of institutional security, id., the Supreme Court later

6

conceded that prison officials may not exercise this discretion in a vacuum, without at some time providing some supporting justification for refusing to consider evidence proffered by inmates.  As the Supreme Court has observed, in this setting:

> The question is ...: "whether the Federal due process requirements impose a duty on [prison officials] the board to explain, in any fashion, at the hearing or later, why witnesses were not allowed to testify."  We think the answer to that question is that prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify, but that they may do so either by making the explanation a part of the "administrative record" in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a "liberty" interest is challenged because of that claimed defect in the hearing.  In other words, the prison officials may choose to explain their decision at the hearing, or they may choose to explain it "later".

> Ponte v. Real, 471 U.S. 491, 497, 105 S.Ct. 2192, 85 L.Ed.2d 553(1985).

Thus, in this context, due process requires an adequate explanation of a refusal to examine potentially exculpatory evidence, and does not permit a wholly unexplained refusal to examine such evidence.

In the federal prison system, the Bureau of Prisons has, by regulation, adopted specific guidelines for inmate discipline procedures which are set forth at 28 C.F.R. § 541.10, *et seq.*  These guidelines are specifically tailored and designed to meet the due process requirements outlined by the Supreme Court in Wolff.  See Von Kahl v. Brennan, 855 F.Supp. 1413 (M.D.Pa.1994).  Under these regulations, when prison staff have reason to believe that a prohibited act has been committed by an inmate, an

incident report must be prepared and referred for investigation.  28 C.F.R. § 541.14.

After investigation, the incident report is referred to a Unit Discipline Committee

(UDC) for an initial hearing.  28 C.F.R. § 541.15.  The inmate, in turn, is entitled to

notice of any proposed violation.  The UDC may either reach a finding regarding

whether a prohibited act was committed, or refer the case to the Discipline Hearing

Officer (DHO) for further hearing.  28 C.F.R. § 541.15(f).  The DHO then has the

authority to dismiss any charge, to find a prohibited act was committed, and to impose

any available sanction for the act. 28 C.F.R. § 541.18.  The DHO hearing is conducted

pursuant to the procedures set forth at 28 C.F.R. § 541.17.

Throughout this hearing process the inmate is provided with a series of

procedural rights.  For example, the inmate is entitled to notice of the alleged

infraction.  Specifically, the Warden must give the inmate advance written notice of

the charges no less than 24 hours before the DHO hearing.  28 C.F.R. § 541.17(a).

The inmate is also entitled to assistance at DHO hearings.  In particular, the Warden

must provide the inmate with a full time staff member to represent him at the DHO

hearing.  28 C.F.R. § 541.17(b).

The inmate also has a series of procedural rights at the hearing itself.  Thus, at

the DHO hearing, the inmate is entitled to make a statement and present documentary

evidence.  The inmate also has the right to submit names of requested witnesses and

have them called to testify and to present documents.  While the DHO need not call

repetitive witnesses or adverse witnesses, 28 C.F.R. § 541.17(c), the DHO shall call

those witnesses who have information directly relevant to the charges and who are

reasonably available.  The inmate has the right to be present throughout the DHO

hearing except during deliberation or when institutional security would be jeopardized.

28 C.F.R. § 541.17(d).

In addition, the regulations prescribe procedural standards for DHO decision-

making.  Thus, the regulations require that the DHO must consider all evidence

presented at the hearing.  The decision of the DHO must be based on the facts

presented, and if there is conflicting evidence, it must be based on the greater weight

of the evidence. 28 C.F.R. § 541.17(f).  Finally, the DHO must prepare a record of the

proceedings.  This record must be sufficient to document the advisement of inmate

rights, the DHO's findings, the DHO's decision and the specific evidence relied upon

by the DHO.  The record must include a brief statement of the reasons for the sanction

imposed.  A copy of this record must be delivered to the inmate, ordinarily within 10

days of the hearing.  28 C.F.R. § 541.17(g).

These regulations also expressly address the situation in which an inmate

requests the right to have some potentially exculpatory proof considered, addressing

these requests in two ways.  First, the regulations give an inmate the right to request

9

that such evidence be presented and considered by the DHO.  These regulations further parallel the Supreme Court's guidance by imposing upon disciplinary officials an affirmative obligation to provide some explanation when they decline to consider potentially exculpatory proof requested by an inmate.  See 28 C.F.R. § 541.17(c).

Exculpatory evidence is defined as "evidence favorable to an accused ... where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the [government]." United States v. Starusko, 729 F.2d 256, 260 (3d Cir.1984), quoting Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  In a prison setting, cases have defined the minimal due process requirements which must be met when an inmate requests that a DHO consider potentially exculpatory evidence.  First, in the absence of a timely request by an inmate for the presentation of such evidence, there is no general affirmative obligation on the part of prison officials to ferret out this proof.  See, e.g., Piggie v. Cotton, 342 F.3d 660 (7th Cir.2003).  In addition, it is clear that due process is satisfied if prison officials, upon request by an inmate, inquire and determine that there is no evidence.  See, e.g., Pachtinger v. Grondolsky, 340 F.App'x 774 (3d Cir.2009) (inmate informed no video existed).  Similarly, the requirements of procedural due process are often met if, following an inmate request, prison officials examine existing evidence in camera in making their determination regarding whether a prison infraction has occurred.  See,

10

e.g., Scruggs v. Jordan, 485 F.3d 934 (7th Cir.2007); Herrera v. Davis, 54 F.App'x 861

(7th Cir.2002); Jones v. Sherrod, No. 07–673, 2010 WL 3880409 (S.D.Ill. Sept.28,

2010) (Hearing officer may rely upon an accurate description of a video provided by

another staff member).  Finally, disciplinary officials may also refuse to consider such

evidence entirely, despite an inmate's request, provided that they give, at some time,

an adequate explanation of the reasons for refusing to consider the evidence.  See, e.g.,

Ponte v. Real, 471 U.S. 491, 497, 105 S.Ct. 2192, 85 L.Ed.2d 553(1985).

However, in this setting prison disciplinary officials:

"[M]ay not arbitrarily refuse to consider exculpatory evidence simply
because other evidence in the record suggests guilt."  Whitford v.
Boglino, 63 F.3d 527, 536 (7th Cir.1995) (quoting Viens v. Daniels, 871
F.2d 1328, 1336 n. 2 (7th Cir.1989)).... [Therefore, while the prison]
need not explain at the hearing why it denied an inmate's request for
witnesses or potentially exculpatory evidence, the [prison] has the burden
of proving [at some time] that its denial was not arbitrary or capricious.
See Ponte v. Real, 471 U.S. 491, 498–99, 105 S.Ct. 2192, 85 L.Ed.2d 553
(1985).

Piggie v. McBride, 277 F.3d 922, 925 (7th Cir.2002).

If the prison does not meet this minimal burden of showing that its denial was

not arbitrary or capricious, then remand of this case for further consideration of any

potentially relevant evidence is appropriate.  See, e.g., Felder v. McBride, 121 F.App'x

655 (7th Cir.2004); Piggie v. McBride, 277 F.3d 922, 925 (7th Cir.2002); Shorter v.

<u>Buss</u>, No. 06–233, 2006 WL 3775982 (N.D.Ind. Dec.22, 2006).   Thus, in this particular context, in order to state a procedural due process claim an inmate must show that the inmate timely presented evidence of a potentially exculpatory character; which was not considered in any fashion; and there is not a contemporary or subsequent explanation by prison officials of the reasons for their refusal to consider the exculpatory evidence which permits the court to find that the decision to refuse to examine the evidence was an informed judgment.   <u>See Davis v. Hufford</u>, 1:11-CV-2219, 2012 WL 727697 (M.D. Pa. Feb. 10, 2012) <u>report and recommendation adopted,</u> 1:11-CV-2219, 2012 WL 744984 (M.D. Pa. Mar. 6, 2012).

    Furthermore, it is clear that " '[a] prison disciplinary body may not arbitrarily refuse to consider exculpatory evidence offered by a prisoner simply because the record already contains the minimal evidence suggesting guilt required by <u>Hill</u>.' <u>Viens v. Daniels</u>, 871 F.2d 1328, 1336 n. 2 (7th Cir.1989)." <u>Willams v. Thomas</u>, CIV. 08-1439-ST, 2009 WL 2424642 (D. Or. Aug. 6, 2009).   Therefore, when a DHO fails to consider exculpatory evidence in a meaningful way, a remand of the disciplinary matter with directions to fully consider the potentially exculpatory proof is appropriate.   Indeed, without some explanation by the DHO of the reasons for disregarding potentially exculpatory evidence, it has been held that judicial review of

that DHO decision is effectively impossible.  See Maydak v. Warden, FCI Raybrook,

1 F. App'x 55, 56 (2d Cir. 2001).

**B.     The DHO Decision Did Not Adequately Address the Exculpatory Evidence Presented By Howell**

Judged against these benchmarks, we conclude that a remand of this case is

appropriate.  At the outset, we find that Howell presented substantial exculpatory

evidence to the DHO when he stated, without contradiction, that he had moved into

the cell hours before a cell search uncovered knives, and was unaware of the hidden

weapons found in that cell.  Howell's denial of an knowledge of these weapons,

combined with the fact that Howell had never previously occupied the cell was

potentially exculpatory.  If credited, Howell's assertions would have provided a

complete defense to this charge.  At a minimum, Howell's claim that he was unaware

of the presence of these knives in the cell, coupled with his uncontested assertion that

he had not previously occupied the cell, required some consideration and analysis by

the DHO.  However, in the case the DHO did not address this exculpatory evidence

in any meaningful way.  Indeed, it is unclear whether the DHO even recognized

Howell's statement as exculpatory since the DHO cited "HOWELL's acknowledgment

that he is responsible for all items, to include contraband found in his cell" to support

his finding of guilt in this matter.  (Doc. 5-1, Ex. G.)  The problem with this assertion

by the DHO is that it completely misconstrues Howell's exculpatory assertion and actually distorts that exculpation into some form of confession of guilt, which it plainly is not.   Fairly read, Howell denied culpability and pointed to verifiable facts–his lack of prior access to the cell–to support this claim of innocence.  Since the DHO opinion did not address this exculpatory information in a meaningful way, and in fact distorted the meaning of Howell's statement, it is impossible to assess the adequacy of the DHO decision, and a remand is necessary in this case to have this defense addressed in a meaningful way.  See Maydak v. Warden, FCI Raybrook, 1 F. App'x 55, 56 (2d Cir. 2001).

We also note a second aspect of the DHO decision which merits further clarification on remand.  That decision contains a troubling ambiguity with respect to its findings concerning the weight of the evidence, stating:  "the DHO has drawn the conclusion the greater weight of the evidence/some facts, listed in the paragraphs above, support(s) the finding, inmate HOWELL, Jacob, Register Number 07945-068, committed the prohibited act(s) of Possession of a Weapon, . . ., at or about 11:05 a.m., in Unit #A, Cell #211, at FCI Schuylkill, Pa."  (Doc. 5-1, Ex. G.)  As written, this DHO finding seems to equate "the greater weight of the evidence" with the mere presence of "some facts."  The two terms are not the same, but rather have quite different meanings in terms of a description of the persuasive power of certain

14

evidence. Therefore, a remand is also necessary to allow the DHO to clarify what he meant in this description of the evidence, what facts he found, and what weight he gave those facts.

**III**.   **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be GRANTED, in part and this matter be remanded to the Bureau of Prisons with instructions that the disciplinary citation either be expunged, or Howell be afforded a DHO hearing in which his potentially exculpatory evidence is directly addressed.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 21st day of July, 2014.

_**S/Martin C. Carlson**_
Martin C. Carlson
United States Magistrate Judge