IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACOB HOWELL, | : | CIVIL NO. 1:12-CV-2341 |
| | : | |
| Petitioner, | : | (Judge Rambo) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| J. CASTANEDA, | : | |
| | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

#### A.   Introduction

This case involves a habeas corpus petition by a federal inmate, challenging the outcome of a disciplinary proceeding.  We had initially recommended that this disciplinary matter be remanded to the Bureau of Prisons for further proceedings to further consider exculpatory information presented by the petitioner. (Doc. 8.)  Upon review, the District Court determined, however, that a remand to the Bureau of Prisons was not necessary on this claim.  (Docs. 14  and 15.)  Instead, the District Court upheld the DHO's treatment of the evidence in this case, and remanded this matter to us for consideration of two procedural complaints made by Howell; namely, Howell's claim that the Bureau of Prisons violated its own regulations by failing to hold a

timely hearing and further failed to provide the petitioner with staff assistance in this disciplinary setting.

For the reasons set forth below, it is recommended that these procedural claims advanced by Howell in this habeas corpus petition be denied

### B.   DHO Proceedings

The pertinent facts in this case can be simply stated:

The petitioner, Jacob Howell, is a federal prisoner who was housed at the Federal Correctional Institution, Schuylkill, in April of 2012.  On the evening of April 12, 2012, Howell was moved by prison staff into cell 211, a cell previously occupied by other prisoners, and a cell that Howell now shared with another inmate.  The following morning, the cell that Howell shared with another inmate was searched and the searching officer reported that:

> On 4/13/2012 at 11:05 am, while shaking down cell 211, I discovered a 5 3/4 & 10 3/4 inch metal weapon located in the window fixture.  The 5 3/4 inch weapon was a flattened piece of metal that was bent to a point and the 10 3/4 inch weapon was a silver piece of metal rod from an unknown source.  The cell is also occupied by inmate BOWMAN #42372-060.

(Doc. 5-1, Ex. G.)

This incident report was delivered to Howell on April 13, 2012, at approximately 6:19 p.m. (Id. §§ 14-16.)  Six days later, on April 19, 2012, Howell appeared before the Unit Discipline Committee ("UDC"), where he received and

2

signed a copy of the "Inmate Rights at Discipline Hearing" form.  (Id., Ex. 1, McCluskey Decl.; Attach. F, Inmate Rights at Discipline Hearing Form, at 1.)  Howell also signed the form entitled "Notice of Discipline Hearing Before the DHO."  (Id., Ex. 1, McCluskey Decl.; Attach. F, Notice of Discipline Hearing Before the DHO Form, at 2.)  These forms notified Howell of his right to staff assistance at disciplinary hearings, and on the forms, Howell indicated that he understood his rights and he did not want a staff representative or any witnesses at the DHO hearing.  (Id.)  The UDC then referred the charge to the DHO for further hearing.  (Id., Ex. 1, McCluskey Decl; Attach. E, Incident Report §§ 17-21.)

That DHO hearing took place approximately 2 weeks later, on May 2, 2012. (Id., Ex. 1, McCluskey Decl.; Attach. G, DHO Report § I(B).)  At the hearing, the issue of Howell's right to staff assistance arose again, and it was noted that Howell requested a staff representative who was not available.  (Id. § II(C).)  Howell was informed he had the option of postponing the hearing, however, he elected to waive the appearance of a staff representative and declined the appearance of any witnesses. (Id. §§ II(C), III(C)(1).)  At this hearing, Howell was advised of his rights and denied the charge stating he understood he was responsible for items found in his cell, but the weapons found were not his.  (Id. § III(B).)

3

On May 10, 2012, the DHO issued his written decision in this disciplinary matter. ( Id. § IX. )  In that decision, the DHO found, based upon the greater weight of the evidence, that Howell committed the prohibited act of possession of a weapon on April 13, 2012.  (Id. § V.)   The DHO sanctioned Howell to thirty days in disciplinary segregation, a twenty-one day disallowance of good conduct time, and a four-month loss of telephone privileges.  (Id. § VI.)   A copy of the report was delivered to petitioner on May 11, 2012.  (Id. § IX.)

## C.    Howell's Administrative Appeal

The Bureau of Prisons has an administrative remedy process, which must be exhausted before an inmate can bring an action in federal court.  See 28 C.F.R. § 542 et seq.  The administrative remedy process is a method by which an inmate may seek formal review of a complaint related to any aspect of his imprisonment.  See 28 C.F.R. § 542.10(a).  While there are generally several levels of review within an institution for inmates, appeals of a DHO decision must be "submitted initially to the Regional Director for the region where the inmate is currently located."  28 C.F.R. § 542.14(d)(2).  An inmate has twenty calendar days to file such an appeal.  See 28 C.F.R. § 542.15(a).  The inmate may further appeal an adverse decision to the Central Office of the BOP within thirty calendar days of the Regional Director's decision.  Id. No administrative remedy appeal is considered to have been fully and finally

exhausted until it has been denied by the BOP's Central Office.  (<u>Id</u>., Ex. 1, ¶ 7.)  All administrative remedies, whether accepted or rejected, are entered into the BOP's computerized database.  However, actual copies of rejected administrative remedies are not maintained.  (<u>Id</u>. ¶ 8.)

In this case, a review of the Bureau of Prison's administrative remedy record for Howell indicates that Howell appealed the DHO's decision to both the Regional and Central Offices, but did not assert in those appeals the procedural due process violations cited here relating to not having a staff representative and an untimely DHO hearing. (<u>Id</u>., Ex. 1, McCluskey Decl.; Attach. D, Administrative Remedy Appeal and Resp. )  Furthermore, even if Howell attempted to raise these procedural due process claims for the first time mid-way through this administrative process, those claims would be rejected since issues not raised in the lower level administrative remedy filings may not be raised in a later appeal.  <u>See</u> 28 C.F.R. § 542.15(b)(2).

## II.   <u>Discussion</u>

In this case, upon a consideration of Howell's remaining procedural claims relating to this disciplinary hearing, we find that Howell is not entitled to habeas corpus relief due to either the brief delay in conducting this hearing, or his decision to proceed without the assistance of a staff representative at this hearing.  In our view

these claims, the only remaining claims in this petition which have not yet been addressed, were not exhausted by Howell, as required by law, and fail on their merits

### A.    The Exhaustion Doctrine Bars Consideration of the Remaining Claims Made By Howell in this Habeas Petition

At the outset, to the extent that Howell first raises these procedural questions in his federal habeas corpus petition, this petition suffers from a fundamental procedural flaw, since the petitioner has failed to properly exhaust his administrative remedies within the federal prison system.  Although 28 U.S.C. § 2241 contains no express exhaustion requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." Gambino v. Morris, 134 F.3d 156, 171 (3d Cir.1998); see also, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir.2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir.1981).  These exhaustion rules serve an important and salutary purpose.  The United States Court of Appeals for the Third Circuit requires administrative exhaustion of a claim raised under § 2241 for three reasons:  "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Federal Bureau of

Prisons, 98 F.3d 757, 761-62 (3d Cir.1996); see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir.1988).

In this case, it is undisputed that Howell has not fully exhausted his administrative remedies with respect to the procedural claims he now advances, since Howell neglected to fully prosecute these claims in his grievance through the three-tier grievance process prescribed by prison regulations. Thus, as to these particular claims, this case presents the paradigm of an unexhausted petition. With respect to unexhausted habeas claims like those presented by here, it is well settled that: "Courts in the Middle District of Pennsylvania have consistently held that 'exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals . . . ..' " Ross v. Martinez, No. 09-1770, 2009 WL 4573686, 3 (M.D.Pa. Dec. 1, 2009). Quite the contrary, rigorously applying these exhaustion requirements, courts have consistently rejected habeas petitions challenging prison disciplinary decisions where the inmate-petitioners have failed to fully and properly exhaust their administrative remedies. See, e.g., Johnson v. Williamson, 350 F. App'x 786 (3d Cir. 2009); Pinet v. Holt, 316 F. App'x 169 (3d Cir. 2009); Moscato v. Federal Bureau of Prisons, 98 F.3d. 757 (3d Cir. 1996).

As this Court has previously explained when dismissing a federal prisoner's habeas petition for failure to exhaust administrative remedies:

In order for a federal prisoner to exhaust his administrative remedies, he
must comply with 28 C.F.R. § 542.  See 28 C.F.R. § 542.10, et seq.;
Lindsay v. Williamson, No. 1:CV-07-0808, 2007 WL 2155544, at *2
(M.D.Pa. July 26, 2007).  An inmate first must informally present his
complaint to staff, and staff shall attempt to informally resolve any issue
before an inmate files a request for administrative relief.  28 C.F.R. §
542.13(a).  If unsuccessful at informal resolution, the inmate may raise
his complaint with the warden of the institution where he is confined. 28
C.F.R. § 542.14(a).  If dissatisfied with the response, he may then appeal
an adverse decision to the Regional Office and the Central Office of the
BOP.  28 C.F.R. §§ 542.15(a), 542.18.  No administrative appeal is
considered finally exhausted until a decision is reached on the merits by
the BOP's Central Office.  See Sharpe v. Costello, No. 08-1811, 2008
WL 2736782, at *3 (3d Cir. July 15, 2008).

Miceli v. Martinez, No. 08-1380, 2008 WL 4279887, 2 (M.D.Pa. Sept. 15, 2008)

This exhaustion rule in federal habeas corpus proceedings is also subject to a

procedural default requirement, requiring inmates to comply with prison rules and

properly exhaust all of their claims in prison grievances.  "[A] procedural default in

the administrative process bars judicial review because 'the reasons for requiring that

prisoners challenging disciplinary actions exhaust their administrative remedies are

analogous to the reasons for requiring that they exhaust their judicial remedies before

challenging their convictions; thus, the effect of a failure to exhaust in either context

should be similar.'  Sanchez, 792 F.2d at 698.  We require exhaustion for three

reasons:  (1) allowing the appropriate agency to develop a factual record and apply its

expertise  facilitates  judicial  review;  (2)  permitting  agencies  to  grant  the  relief

requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy. Bradshaw, 682 F.2d at 1052; see also Schlesinger v. Councilman, 420 U.S. 738, 756-57, 95 S.Ct. 1300, 1312, 43 L.Ed.2d 591 (1975) (exhaustion avoids duplicative proceedings and insures that judicial review will be informed and narrowed); McKart v. United States, 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969) (circumvention of administrative process diminishes effectiveness of an agency by encouraging prisoners to ignore its procedures). Requiring petitioners to satisfy the procedural requirements of the administrative remedy process promotes each of these goals." Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996). For these reasons, "a federal prisoner who challenges a disciplinary proceeding within a federal institution, fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." Id.

This basic legal tenet applies here and is fatal to these last remaining aspects of Howell's habeas corpus petition. With respect to his procedural complaints regarding the timing of this hearing, and his request for staff assistance, Howell is an inmate who has failed to exhaust his remedies, and now fails to provide cause and prejudice

which excuses this earlier procedural default.  Therefore, these unexhausted claims should be dismissed.

In any event, this petition should be denied because, as discussed below, the petition fails on its merits.

## B.   This Petition Fails on Its Merits

Considered on its merits, this petition fails on substantive grounds given the deferential standard of judicial review that applies to prison disciplinary actions. Liberally construed, in this habeas petition Howell's remaining claims launch a constitutional assault upon this prison disciplinary decision, challenging that disciplinary process on procedural due process grounds.  Howell faces an exacting burden of proof in advancing this procedural due process claim.

## 1.   Procedural Standards for DHO Hearings

First, with respect to his procedural due process concerns, it is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to:  (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional

goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." Meyers, 492 F.2d at 306. In the past, inmates have often invited courts to set aside disciplinary hearing results based upon general assertions of staff bias. Yet, such requests, while frequently made, have rarely been embraced by the courts. Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston, 288 F.App'x. 797, 799 (3d Cir. 2008), courts generally decline to strike down disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F.App'x 488 (3d Cir. 2007).

In the federal prison system, the Bureau of Prisons has, by regulation, adopted specific guidelines for inmate discipline procedures which are set forth at 28 C.F.R. §541.10 et seq.  These guidelines are specifically tailored and designed to meet the due process requirements outlined by the Supreme Court in Wolff.  See Von Kahl v. Brennan, 855 F. Supp. 1413 (M.D. Pa. 1994).  Under these regulations, when prison staff have reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation.  28 C.F.R. §541.5.[1]  After investigation, the incident report is referred to a Unit Discipline Committee (UDC) for an initial hearing.  28 C.F.R. §541.7.  The inmate, in turn, is entitled to notice of any proposed violation.  The UDC may either reach a finding regarding whether a prohibited act was committed, or refer the case to the Discipline Hearing Officer (DHO) for further hearing.  28 C.F.R. §541.7(a).  The DHO then has the authority to dismiss any charge, to find a prohibited act was committed, and to impose any available sanction for the act.  28 C.F.R. §541.8.  The hearing is conducted pursuant to the procedures set forth at 28 C.F.R. §541.8.

---

[1]The BOP revised this section of Title 28 at 28 C.F.R. §§ 541 through 541.8, effective June 20, 2011.  While the numbering of the regulations have changed, the substance of the regulations basically remained the same with respect to the disciplinary review process.  Townsend v. Warden, FCC Lewisburg, 3:CV-12-0636, 2013 WL 371930 (M.D. Pa. Jan. 30, 2013)

Throughout this hearing process the inmate is provided with a series of procedural rights.  For example, the inmate is entitled to notice of the alleged infraction.  Specifically, the Warden must give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing.  28 C.F.R. §541.8(c).  Upon request, the inmate is also entitled to assistance at DHO hearings.  In this regard, the regulation provides as follows:

(d) Staff Representative.  You are entitled to have a staff representative during the DHO hearing process as follows:

(1) How to get a staff representative.  You may request the staff representative of your choice, so long as that person was not a victim, witness, investigator, or otherwise significantly involved in the incident. If your request(s) cannot be fulfilled, and you still want a staff representative, the Warden will appoint one.  The Warden will also appoint a staff representative if it appears you are unable to adequately represent yourself before the DHO, for example, if you are illiterate or have difficulty understanding the charges against you.

(2) How the staff representative will help you. Prior to the DHO's hearing, the staff representative will be available to help you understand the incident report charges and potential consequences. The staff representative may also assist you by speaking with and scheduling witnesses, obtaining written statements, and otherwise helping you prepare evidence for presentation at the DHO's hearing.  During the DHO's hearing, you are entitled to have the staff representative appear and assist you in understanding the proceedings. The staff representative can also assist you in presenting evidence during the DHO's hearing.

(3) How the staff representative may appear.  Your staff representative may appear either in person or electronically (for example, by video or telephone conferencing) at the DHO's discretion.   If your staff

13

representative is not available for the scheduled hearing, you may either select another staff representative, request the hearing be postponed for a reasonable amount of time until your staff representative can appear, or proceed without a staff representative.

28 C.F.R. § 541.8(d).

The inmate also has a series of procedural rights at the hearing itself. Thus, at the DHO hearing, the inmate is entitled to make a statement and present documentary evidence. The inmate also has the right to submit names of requested witnesses and have them called to testify and to present documents. While the DHO need not call repetitive witnesses or adverse witnesses, 28 C.F.R. §541.8(f), the DHO shall call those witnesses who have information directly relevant to the charges and who are reasonably available. The inmate has the right to be present throughout the DHO hearing except during deliberation or when institutional security would be jeopardized. 28 C.F.R. §541.8(e).

In addition, the regulations prescribe procedural standards for DHO decision-making. Thus, the regulations require that the DHO must consider all evidence presented at the hearing. The decision of the DHO must be based on the facts presented, and if there is conflicting evidence, it must be based on the greater weight of the evidence. Finally, the DHO must prepare a record of the proceedings. This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied upon by the DHO. The

14

record must include a brief statement of the reasons for the sanction imposed.  A copy of this record must be delivered to the inmate.  28 C.F.R. §541.8(h).

Given the panoply of procedural protections afforded to inmates by these regulations, courts have consistently held that when prison officials comply with these regulations they fully satisfy the requirements of procedural due process in this prison disciplinary setting.  See, e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009) (upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).  Furthermore, absent a showing a prejudice, an inmate cannot transform regulatory compliance concerns into a due process violation since a petitioner "cannot show that his right to due process was violated by a technical non-compliance with a regulation where any delay did not prejudice him.  See Wilson v. Ashcroft, 350 F.3d 377, 380–81 (3d Cir.2003)."  Millhouse v. Bledsoe, 458 F. App'x 200, 203 (3d Cir. 2012).

### C.   Howell Was Afforded His Procedural Due Process Rights at the DHO Hearing

Judged against these standards, Howell's procedural challenges to this prison disciplinary proceeding simply fail.  First, with respect to these procedural due process claims, in this case it is evident that this prisoner's due process rights were fully

vindicated.  Howell received advance, written notice of the proposed disciplinary charges against him.  Moreover, he was notified on multiple occasions of his procedural due process rights, including his right to have staff assistance and to request witnesses.  In this case, Howell either exercised those rights, or expressly waived the rights he had in connection with this disciplinary hearing.

In particular, with respect to Howell's complaints regarding his alleged lack of staff assistance, on April 19, 2012, Howell appeared before the Unit Discipline Committee ("UDC"), where he received and signed a copy of the "Inmate Rights at Discipline Hearing" form.  (Id., Ex. 1, McCluskey Decl.; Attach. F, Inmate Rights at Discipline Hearing Form, at 1.)  Howell also signed the form entitled "Notice of Discipline Hearing Before the DHO."  (Id., Ex. 1, McCluskey Decl.; Attach. F, Notice of Discipline Hearing Before the DHO Form, at 2.)  These forms notified Howell of his right to staff assistance at disciplinary hearings, and on the forms, Howell indicated that he understood his rights and he did not want a staff representative or any witnesses at the DHO hearing.  (Id.)  The UDC then referred the charge to the DHO for further hearing.  (Id., Ex. 1, McCluskey Decl; Attach. E, Incident Report §§ 17-21.)  That DHO hearing took place approximately 2 weeks later, on May 2, 2012.  (Id., Ex. 1, McCluskey Decl.; Attach. G, DHO Report § I(B).)  At the hearing, the issue of Howell's right to staff assistance arose again, and it was noted that Howell requested

a staff representative who was not available.  (Id. § II(C).)  Howell was informed he had the option of postponing the hearing, however, he elected to waive the appearance of a staff representative and declined the appearance of any witnesses.  (Id. §§ II(C), III(C)(1).)  Furthermore, once the hearing was concluded prison officials scrupulously complied with prison regulations, and afforded Howell his due process rights, by providing him with written decisions outlining the basis of their actions, and describing his appellate rights.

Judged against these standards, Howell's remaining procedural claim simply fail.  At the outset, it is clear that a brief delay in conducting this disciplinary hearing, standing alone, does not constitute a due process violation justifying habeas relief in the absence of a showing of prejudice to the petitioner.  Guardiola v. Zickefoose, 3:13-CV-02621, 2014 WL 3921368, *10 n. 1 (M.D. Pa. Aug. 11, 2014)("absent some showing of prejudice, a showing which is not made here . . . , the delay in conducting prison discipline proceedings will not offend due process.")  Thus, a petitioner may not obtain habeas corpus relief by simply alleging, as Howell does, that these hearing did not occur within the timetables typically set by prison policies since the petitioner, "cannot show that his right to due process was violated by a technical non-compliance with a regulation where any delay did not prejudice him.  See Wilson v. Ashcroft, 350

F.3d 377, 380–81 (3d Cir.2003)." Millhouse v. Bledsoe, 458 F. App'x 200, 203 (3d Cir. 2012).

Likewise, Howell's complaints about his lack of staff representation are also unavailing. Inmates frequently make such complaints in the context of challenges to prison disciplinary proceedings. Yet, such claims, while often made, are rarely embraced by the courts. Instead, courts recognize that inmate may not choose their staff representative. Deen-Mitchell v. Bledsoe, 548 F. App'x 747, 750 n. 5 (3d Cir. 2013); Mitchell v. Romine, 158 F. App'x 367, 369 (3d Cir. 2005). Further, "[i]nmates do not have a constitutional right to appointed counsel in prison disciplinary hearings. Wolff, 418 U.S. at 570, 94 S.Ct. 2963. Although BOP regulations provide for staff assistance in certain cases, the lack of such representation . . . does not [automatically] constitute a due process violation." Macia v. Williamson, 219 F. App'x 229, 233 (3d Cir. 2007).

Here, the record of Howell's disciplinary hearing reveals that he was advised of his right to staff assistance, and initially declined staff help. Later, when Howell renewed a request for staff assistance at his DHO Hearing, and was offered the option of a continuance of the hearing so a staff representative could be obtained, he waived this right and proceeded without a staff representative. By notifying Howell of his right to staff assistance at his initial UDC appearance, and then offering to continue

his final DHO Hearing when Howell belatedly requested staff help, prison officials did all that was required of them.  Howell's waiver of staff assistance, therefore, does not present a matter of constitutional dimension warranting federal habeas corpus relief.

**III**.   **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of the merits of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue as to the issues addressed in this Report and Recommendation.[2]

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

---

[2]We leave to the sound discretion of the Court the question of whether DHO's treatment of exculpatory evidence warrants further appellate review.

Submitted this 14th day of October, 2014.

<div style="margin-left: 50%;">

**_S/Martin C. Carlson_**
Martin C. Carlson
United States Magistrate Judge

</div>